Harold Lynn MORRIS, Petitioner,

v.

STATE INDUSTRIAL COMMISSION, Tri-State Insurance Company, and Eldridge Construction Company, Respondents.

No. 36847.

Supreme Court of Oklahoma.

Oct. 18, 1955.

Richard E. Romang, Enid, for petitioner.

Fenton & Fenton, Oklahoma City, Mac Q. Williamson, Atty. Gen., for respondents.

DAVISON, Justice.

On November 25, 1952, Harold Lynn Morris, referred to herein as petitioner, filed a claim for compensation against his employer Eldridge Construction Company and its insurance carrier, Tri-State Insurance Company, respondents herein, in which he states that on November 14, 1952, while in the employ of respondent Eldridge Construction Company he sustained an accidental injury consisting of an injury to his back since which time he has not been able to do any work; that the injury occurred when he fell from a keg of nails while reaching for building material.

The trial commissioner found that on the 14th day of November, 1952, while in the employ of Eldridge Construction Company petitioner sustained an accidental injury consisting of an injury to his back but that he sustained no disability, either temporary or permanent, and entered an order denying compensation which was sustained on appeal to the Commission en banc. Petitioner brings the case here to review this order and contends that it is not sustained by the evidence and is contrary to law. This is the second appeal. See Morris v. State Industrial Commission, Okl.; 268 P.2d 895. The evidence at the former hearing was by stipulation admitted in evidence at the present hearing.

In that hearing petitioner testified that he went to a shed used for supplies and was standing on a nail keg to get some caulking compound from a shelf; the compound was too high to reach easily and when he attempted to reach a little higher the nail keg flew out from under him and he fell lighting on his right knee. The pain was severe in his right knee and part of his leg. He did not notice any pain in his back at that time. He went back to the office after

resting for approximately ten minutes and told his fellow employee that he fell from a keg. He was alone when he fell and no one but his fellow employee was present in the office. He noticed the injury to his back an the next day which was Saturday. It was his day off. He was treated by a physician on Sunday and was unable to report for work the following Monday. The manager of employer sent him to the employer's doctor on Monday following the accident on Friday. He was sent to the hospital and given penicillin and shots. He went home November 23rd. He saw several doctors and later was placed in the hospital again. On January 7, 1953, he was released by the employer's doctor.

Five physicians also testified at the hearing to which evidence we shall later refer.

The Commission found at that hearing that petitioner on November 14, 1952, while in the employ of Eldridge Construction Company sustained an accidental injury consisting of an injury to his right knee; that he suffered no disability, either temporary or permanent, as a result of said injury and entered an order denying compensation which order was vacated by this court. The court there stated that the finding of the Commission that petitioner sustained an injury to his knee was not responsive to the issues presented at the hearing. It is pointed out that petitioner claimed no injury to his knee but on the contrary claimed an injury to his back; that all the evidence referred and related to an injury to his back and no witness testified as to any injury as to his knee. We held on that appeal that petitioner was entitled to a finding on the issue as to whether he had sustained an injury to his back and if so as to whether he sustained any disability as a result thereof and remanded the cause to the Commission for the purpose of determining such issue.

█ Dr. H., the doctor who treated petitioner while in the hospital, in his written report states that he first saw and examined petitioner on the 17th day of November, 1952. He obtained a case history from petitioner of having fallen a distance of four or five feet striking his knee. He

was examined by a chiropractor who told him he had a vertebra out of place. His personal examination considered in connection with the case history failed to reveal any evidence of injury. He found he suffered from chills and fever and some infectious process. X-ray showed no evidence of injury to his spine. He was released from the hospital six days later. The doctor after stating in detail petitioner's symptoms and conditions found to exist further stated:

"Claimant was readmitted to the hospital on December 27th, 1952; Complaint on this date was backache, and his back on examination showed very definite spasticity. I asked Dr. B. J. Dordonnier and Dr. James Tagge to see this man in consultation in an effort to determine whether or not any injury to his spine was evident and attempt to determine the origin of his infection. To date all his various tests have proven negative, however, he continues to run some slight elevation in temperature and complains of backache. X-ray of chest and spine show no evidence of pathology. Examination of spinal fluid was negative; examination of blood so far has been negative.

"My impression is that this man is suffering from some type of infectious process and its origin remains undetermined. I do not feel that he is suffering from an injury or has had any injury. * * *"

The doctor later testified by deposition. His deposition was taken and introduced in evidence by respondents. The examination in chief related mainly to the question as to whether petitioner was directed to go to the doctor for treatment by his employer or whether he went of his own accord. On cross-examination the doctor was questioned further as to petitioner's condition and the cause thereof and the doctor testified substantially as he did in his report. No new facts were developed. He adhered to the conclusion that petitioner's disability and condition were due to infectious process not related to or caused by any injury. In this respect the doctor testified:

"Q. The fact that he might have been suffering from an infectious process wouldn't do away with the fact that he might have been suffering from an injury at the time, would it? A. He could have had an injury and infection at the same time, but he showed no evidence of injury on admission.

"Q. Other than his complaint to his back? A. Yes, which I attributed to his infection, rather than injury."

Several other doctors were called in consultation, examined petitioner and filed written reports in the case in which they reached the same conclusion as did Dr. H.

We have many times held where the commission finds there is no disability either temporary or permanent as the result of an accidental injury and compensation is denied the order will be sustained by this court where there is any competent evidence to support the same. Roberts v. Magnolia Pet. Co., 201 Okl. 370, 205 P.2d 1160, and numerous cases therein cited.

Order sustained.

JOHNSON, C. J., WILLIAMS, V. C. J., and CORN, HALLEY, BLACKBIRD and JACKSON, JJ., concur.